UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| SUSAN B.[1], | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 1:20-cv-348 |
| | ) |
| KILOLO KIJAKAZI [2], | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

**OPINION AND ORDER**

This matter is before the court on petition for judicial review of the decision of the Commissioner filed by the plaintiff, Susan B., on October 5, 2020. For the following reasons, the decision of the Commissioner is **REMANDED.**

*Background*

The plaintiff, Susan B., filed an application for Title II disability insurance benefits on March 22, 2017. (Tr. 15). She first alleged a disability onset date of November 19, 2013, which later was amended to March 22, 2017. (Tr. 15). The claim was denied initially, upon reconsideration, and in a decision by Administrative Law Judge (ALJ) Sherry D. Thompson on July 25, 2018. (Tr. 15). Susan B. appealed the unfavorable decision. (Tr. 15). The Appeals Council remanded the case on April 1, 2019. In its remand order, the Appeals Council found that the prior decision did not contain an adequate evaluation of the consultative examiner's opinion, the vocational expert was not asked about the restriction for overhead reaching, and additional vocational testimony was needed to clarify the effect of the assessed limitations on Susan B.'s occupational base. (Tr. 15).

---

[1] To protect privacy, the plaintiff's full name will not be used in this Order.
[2] Andrew M. Saul was the original Defendant in this case. He was sued in his capacity as a public officer. On July 9, 2021, Kilolo Kijakazi became the acting Commissioner of Social Security. Pursuant to **Federal Rule of Civil Procedure 25(d)**, Kilolo Kijakazi has been automatically substituted as a party.

On January 8, 2020, a new hearing was held before ALJ Genevieve Adamo.  (Tr. 15). Vocational Expert (VE) Robert S. Barkhaus, Ph.D., appeared at the hearing.  (Tr. 15).  The ALJ issued an unfavorable decision on February 5, 2020.  (Tr. 15-25).  Susan B. then filed this petition for judicial review on October 5, 2020.

At step one of the five-step sequential analysis for determining whether an individual is disabled, the ALJ found that Susan B. had not engaged in substantial gainful activity since March 22, 2017, the amended alleged onset date.  (Tr. 18).

At step two, the ALJ determined that Susan B. had the following severe impairments: osteoarthritis of the knees; right knee patellar tilt and chondromalacia; lumbar degenerative disc disease; chronic pain syndrome; minimal bilateral wrist and hand degenerative joint disease; trochanteric bursitis; bilateral DeQuervain syndrome; bilateral thumb osteoarthritis of the CMC joint; and obesity.  (Tr. 18).  The ALJ found that Susan B.'s severe impairments significantly limited her ability to perform basic work activities.  (Tr. 18).  The ALJ noted that Susan B. was diagnosed with hypertension, diabetes, acid reflux, and high cholesterol, but she found that these were non-severe impairments since they appeared to be well controlled with medication.  (Tr. 18).  Similarly, the ALJ found that Susan B.'s urinary tract infections and kidney stones were non-severe because they were resolved promptly with treatment.  (Tr. 18).  Furthermore, the ALJ found that Susan B.'s recent fibromyalgia diagnosis was non-severe because it was diagnosed less than twelve (12) months prior to the hearing and because the requirements to support the impairment were not met by the evidence. (Tr. 18).  Lastly, as to Susan B.'s allegations of panic attacks and anxiety, the ALJ found that the mental status examinations in the record documented normal findings and indicated non-severe impairments which were consistent with the state agency psychologists' findings of no severe mental impairments.  (Tr. 18).

At step three, the ALJ concluded that Susan B. did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR

Part 404, Subpart P, Appendix 1. (Tr. 19). The ALJ considered whether the severity of Susan B.'s physical impairments met or medically equaled the criteria of Listings 1.02, 1.04, or 11.14. (Tr. 19). The ALJ considered Listings 1.02 and 1.04 with respect to Susan B.'s lumbar spine, knee, and hip impairments. (Tr. 19). The ALJ found that the requirements of Listings 1.02(A) and 1.04(C) were not met because the evidence did not show an inability to move around effectively for 12 months or more. (Tr. 19). The ALJ found that, even though Susan B. was prescribed a cane, the 1.04(A) requirements were not met because there was "no evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, [or] motor loss … accompanied by sensory or reflex loss or positive straight-leg raising test[.]" (Tr. 19). As to Susan B.'s wrist, hand, and thumb impairments, the ALJ found that the Listing 1.02(B) requirements were not met because the evidence did "not support the inability to perform fine and gross movements effectively." (Tr. 19). The ALJ considered Listing 11.14 with respect to Susan B.'s bilateral DeQuervain syndrome. The ALJ found that the record did not show a disorganization of motor function in two extremities, as set forth in Listing 11.14(A). (Tr. 19). Additionally, the ALJ found that the record lacked evidence of a marked limitation in physical functioning and in the areas of mental functioning as required by Listing 11.14(B). (Tr. 19). Lastly, the ALJ indicated that obesity was not listed, but that it has been recognized to be disabling and could increase the severity of a related impairment. (Tr. 19). However, the ALJ determined that the record did not document a showing that Susan B.'s obesity aggravated any of the other impairments to Listing-level severity. (Tr. 19)

After consideration of the entire record, the ALJ then assessed Susan B.'s residual functional capacity (RFC) as follows:

> [T]he claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) subject to the following additional limitations: The claimant should never climb ladders, ropes, or scaffolds. She is able to occasionally climb ramps and stairs, balance, stoop, kneel, crouch and crawl. She is able to

3

>perform frequent handling, fingering, and overhead reaching. She should avoid unprotected heights. She needs a cane for ambulation.

(Tr. 19). The ALJ explained she followed a two-step process in considering Susan B.'s symptoms. (Tr. 20). First, the ALJ determined whether there was an underlying physical or mental impairment that was shown by a medically acceptable clinical or laboratory diagnostic technique that reasonably could be expected to produce Susan B.'s pain or other symptoms. (Tr. 20). Then the ALJ evaluated the intensity, persistence, and limiting effects of the symptoms to determine the extent to which they limited Susan B.'s work-related activities. (Tr. 28).

After considering the evidence, the ALJ found that Susan B.'s medically determinable impairments reasonably could be expected to cause some of the alleged symptoms. (Tr. 21). However, the ALJ concluded that Susan B.'s statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence in the record. (Tr. 21).

At step four, the ALJ determined that Susan B. was unable to perform any past relevant work. (Tr. 23). Considering Susan B.'s age, education, work experience, and RFC, the ALJ concluded that there were jobs that existed in significant numbers in the national economy that she could perform at the sedentary level of exertion, including document preparer (approximately 45,000 jobs nationally), and charge account clerk (approximately 14,700 jobs nationally). (Tr. 24-25). The ALJ found that Susan B. had not been under a disability, as defined in the Social Security Act, from March 22, 2017, the date of the amended alleged onset date, through the date of the ALJ's decision, February 5, 2020. (Tr. 25).

*Discussion*

The standard for judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is limited to a determination of whether those findings are supported by substantial evidence. **42 U.S.C. § 405(g)** ("The findings of the Commissioner of Social

4

Security, as to any fact, if supported by substantial evidence, shall be conclusive"); *Moore v. Colvin*, 743 F.3d 1118, 1120-21 (7th Cir. 2014); *Bates v. Colvin*, 736 F.3d 1093, 1097 (7th Cir. 2013) ("We will uphold the Commissioner's final decision if the ALJ applied the correct legal standards and supported her decision with substantial evidence"). Courts have defined substantial evidence as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (*quoting* *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Deborah M. v. Saul*, 994 F.3d 785, 788 (7th Cir. 2021); *Zoch v. Saul*, 981 F.3d 597, 601 (7th Cir. 2020). A court must affirm an ALJ's decision if the ALJ supported her findings with substantial evidence and if there have been no errors of law. *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013) (citations omitted). However, "the decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues." *Lopez ex rel Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003).

Disability insurance benefits are available only to those individuals who can establish "disability" under the terms of the Social Security Act. The claimant must show that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months." **42 U.S.C. § 423(d)(1)(A)**. The Social Security regulations enumerate the five-step sequential evaluation to be followed when determining whether a claimant has met the burden of establishing disability. **20 C.F.R. § 404.1520**. The ALJ first considers whether the claimant is presently employed and "doing … substantial gainful activity." **20 C.F.R. § 404.1520(b)**. If she is, the claimant is not disabled and the evaluation process is over. If she is not, the ALJ next addresses whether the claimant has a severe impairment or combination of impairments that "significantly limits … physical or mental ability to do basic work activities." **20 C.F.R. § 404.1520(c)**; *see Williams v. Colvin*, 757 F.3d 610, 613 (7th Cir. 2014) (discussing that the ALJ must consider the combined effects of the claimant's impairments). Third,

the ALJ determines whether that severe impairment meets any of the impairments listed in the regulations. **20 C.F.R. § 401, pt. 404, subpt. P, app. 1**. If it does, then the Commissioner acknowledges the impairment to be conclusively disabling. However, if the impairment does not so limit the claimant's remaining capabilities, the ALJ reviews the claimant's "residual functional capacity" and the physical and mental demands of her past work. If, at this fourth step, the claimant can perform her past relevant work, she will be found not disabled. **20 C.F.R. § 404.1520(e)**. However, if the claimant shows that her impairment is so severe that she is unable to engage in her past relevant work, then the burden of proof shifts to the Commissioner to establish that the claimant, in consideration of her age, education, job experience, and functional capacity to work, is capable of performing other work and that such work exists in the national economy. **42 U.S.C. § 423(d)(2); 20 C.F.R. § 404.1520(f)**; *see* **Biestek**, 139 S. Ct. at 1157 (upon the request of a disability benefits applicant, a vocational expert's refusal to provide the private market-survey data underlying her opinion regarding job availability does not categorically preclude the expert's testimony from counting as "substantial evidence" but, instead, the inquiry is case-by-case).

Susan B. has requested that the court remand this matter for additional proceedings, or in the alternative, reverse the ALJ's decision and award benefits. In her appeal, Susan B. argues that: (1) the ALJ failed to properly evaluate Susan B.'s symptoms and limitations; (2) the ALJ erred by relying on outdated medical assessments and by failing to submit new evidence to medical scrutiny; and (3) that the ALJ erred in failing to properly weigh Susan B.'s treating medical provider opinions.

Of the three arguments, the court finds it necessary to address only the second and third. As to the second issue, Susan B. argues that the ALJ erred in relying on Dr. Stephen Parker's consultative examination and on the State Agency consultants' (Consultants) assessments because they were outdated and incomplete. The court finds it important to note that the ALJ relied only on Dr. Parker's opinion and the Consultants' assessments in her decision.

During Dr. Parker's June 3, 2017 consultative examination, he observed that Susan B. had

no difficulties performing manipulative tasks and opined that Susan B. "could lift and carry less than ten pounds on a frequent basis, but only ten pounds on an occasional basis." (Tr. 22). The ALJ gave weight to Dr. Parker's findings because he had the opportunity to observe Susan B. complete orthopedic maneuvers "first-hand in a clinical setting" and it was "well supported by the record as a whole." (Tr. 22-23).

Dr. J. Sands completed the first of the two state agency assessments on June 14, 2017. Dr. Sands found that Susan B. had the physical residual capacity "to perform light exertion work with no more than occasional stooping, kneeling, crouching, crawling, and climbing of ladders, ropes, scaffolds, ramps, and stairs." (Tr. 23, 105). Dr. Sands identified no other manipulative limitations. (Tr. 23). On August 17, 2017 the second state agency assessment was completed by Dr. M. Brill, who confirmed the physical residual functional capacity assessment provided by Dr. Sands. (Tr. 23, 117-18). As with Dr. Parker, the ALJ "generally adopt[ed] the postural maneuvers" that the Consultants' relayed in their findings, but overall, she gave them "partial weight" because of "updated objective findings in [Susan B.'s] treatment records and the medical opinion of [Dr. Parker] warrant[ed] a reduction to sedentary exertion, use of a cane for ambulation, and reduced manipulative maneuvers in consideration of [Susan B.'s] orthopedic conditions, body habitus, and upper extremity impairments." (Tr. 23, 98-107, 109-119).

Susan B. contends that new medical evidence relating to her upper extremity impairments was submitted after all three examinations, which was not reviewed by any medical source in the intervening two and a half-year period before her second hearing on January 8, 2020. She also claims that the new evidence was supportive of greater manipulative limitations and reasonably could have changed Dr. Parker's or the Consultants' opinions. Moreover, Susan B. contends that the ALJ did not specifically identify or discuss the later submitted evidence in her decision.

The Commissioner argues that the three opinions at issue were not outdated because they were within the time period under consideration since Susan B. set the boundaries of the relevant

7

evidence when she alleged a disability onset date of March 22, 2017. To Susan B.'s argument that the ALJ did not specifically identify or discuss the later submitted evidence, the Commissioner states that this is incorrect because the ALJ did discuss the same recent diagnoses that Susan B. claims were ignored. Lastly, the Commissioner states that the ALJ found the same impairments to be severe at step two, addressed the upper extremity impairments at step three, and discussed the updated objective findings in Susan B.'s treatment and medical records.

An ALJ may not rely on outdated medical opinions "if later evidence containing new, significant medical diagnoses reasonably could have changed the reviewing physician's opinion." *Moreno v. Berryhill*, 882 F.3d 722, 728 (7th Cir. 2018); *see generally* **Lambert v. Berryhill**, 896 F.3d 768 (7th Cir. 2018); *Suetkamp v. Saul*, 406 F.Supp.3d 715, 721 (N.D. Ind. Aug. 27, 2019) (citing *Stags v. Astrue*, 781 F.Supp.2d 790, 749-96 (S.D. Ind. 2011) ("finding that the medical record omitted from review provided 'significant substantive evidence' regarding the claimant's medical impairments and that any medical opinion rendered without taking this record into consideration was 'incomplete and ineffective'")).

There are at least three visits with medical personnel that Dr. Parker and the Consultants could not have considered in rendering their findings. On February 7, 2018, x-rays of Susan B.'s bilateral hands revealed "[m]ild bilateral radiocarpal joint space narrowing." (Tr. 699). On August 14, 2019, additional x-rays completed by Dr. Kevin Francis Oconner revealed minimal wrist and hand degenerative joint disease. (Tr. 1307). Finally, on September 4, 2019, Susan B. met with Physician Assistant Nathan Hyde, supervised by Dr. David M. Conner. (Tr. 1377-81). The physical examination revealed positive Finkelstein tests in both hands. (Tr. 1379-80). Hyde and Dr. Conner also reviewed the August 14, 2019 x-rays and diagnosed Susan B. with bilateral thumb primary osteoarthritis of the CMC joint, as well as DeQuervain syndrome in both wrists. (Tr. 1380). Notably, Susan B. was prescribed "bilateral thumb spica splints for weakness and for pain relief." (Tr. 1380).

The ALJ erred by giving *any* weight to Dr. Parker's opinion and the Consultants' assessments because they were outdated.  The record contains evidence of new diagnoses and treatments, such as the prescribed bilateral thumb spica splints, which came after Dr. Parker's exam and the Consultants' assessments.  With that, the ALJ could not have accurately weighed or relied on Dr. Parker's and the Consultants' findings.

As stated above, the Commissioner argues that the ALJ discussed the recent diagnoses and impairments throughout her decision, but that is irrelevant.  The issue does not lie in whether the ALJ discussed the new evidence but rather that she relied on opinions which were rendered before the new medical evidence became available, making her reliance improper.  *See Moreno*, 882 F.3d at 728 (stating that an ALJ may not rely on outdated medical opinions "if later evidence containing new, significant medical diagnoses reasonably could have changed the reviewing physician's opinion").

In relation to this issue, when stating that she gave "partial weight" to Dr. Parker's clinical observations and work restrictions, the ALJ also stated that "the updated objective findings in [] [Susan B.'s] medical records demonstrated *no significant worsening of her physical impairments* since the time of Dr. Parker's examination." (Tr. 22-23).  "When an ALJ denies benefits, [s]he must build an accurate and logical bridge from the evidence to h[er] conclusion, and [s]he may not 'play doctor' by using h[er] own lay opinions to fill evidentiary gaps in the record." **Holsinger v. Commissioner of Social Security**, 2018 WL 1556409, at *8 (N.D. Ind. Mar. 29, 2018) (citing ***Chase v. Astrue***, 458 Fed.Appx. 553, 556-57 (7th Cir. 2012)); ***Ayala v. Berryhill***, 2018 WL 6696548, at *1 (N.D. Ill. Dec. 20, 2018).  The ALJ's conclusion that the evidence gathered after Dr. Parker's and the Consultants' assessments reflected no significant worsening in physical impairments was not accurate and was an example of "playing doctor."

As to the third issue, Susan B. argues that the ALJ erred by failing to properly weigh the treating source opinion of Hyde, supervised by Dr. Conner, who opined, *inter alia*, that Susan B.

9

should wear bilateral thumb spica splints.  The Commissioner claims that the ALJ was not required to analyze that opinion because Hyde was not an "acceptable medical source" as defined under 20 C.F.R. § 404.1502(a).

Susan B. filed her claim for disability on March 22, 2017.  For claims filed before March 27, 2017, an ALJ should give controlling weight to a treating source opinion if it is supported by medical findings and consistent with other evidence in the record.  ***Kaminski v. Berryhill***, 894 F.3d 870, 874 (7th Cir. 2018); ***Gerstner v. Berryhill***, 879 F.3d 257, 261 (7th Cir. 2018); **20 C.F.R. § 404.1527(c)(2)**.  If the treating source's opinion is not given controlling weight, the ALJ must analyze the regulation's listed factors in determining whether weight should be given to the medical opinion.  *See* **20 C.F.R. § 404.1527(c)(2)** (describing the six-factor weighing process the ALJ must perform for each treating physician).  A treating source medical opinion is an "acceptable medical source" who provides, or has provided, medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with the claimant.  **20 C.F.R. § 404.1527(a)(2)**.  For claims filed prior to March 27, 2017, an acceptable medical source includes a "licensed physician (medical or osteopathic doctor)." **20 C.F.R. § 404.1502(a)(1)**.

Although Nathan Hyde, P.A. is not per se an "acceptable medical source" under 20 C.F.R. § 404.1502(a)(1), the record indicates that when Susan B. was prescribed bilateral thumb spica splints in her visit with Hyde, he was supervised by licensed physician Dr. Conner, who was an "acceptable medical source."  (Tr. 1378-1381).  The ALJ's decision does not make any mention of Hyde or Dr. Conner.  (Tr. 15-25).  For the reasons discussed above, the court is inclined to consider this opinion as a treating source's opinion, so the ALJ was required at least to analyze the listed factors in determining the weight to be given to the opinion.  *See **Gerstner***, 879 F.3d at 263 (finding that the ALJ erred by not considering the relevant regulatory factors listed under 20 C.F.R. § 404.1527(c)).  But, assuming *arguendo*, if Hyde, supervised by Dr. Conner, did not equate to a treating source, the ALJ erred by completely ignoring this line of evidence.  *See **Zurawski v. Halter***, 245 F.3d 881, 887

10

(7th Cir. 2001); ***Suetkamp v. Saul***, 406 F.Supp.3d 715, 719 (N.D. Ind. Aug. 27, 2019) (finding that an ALJ must "articulate at some minimal level h[is] analysis of the evidence" and may not "ignore an entire line of evidence that is contrary to [her] findings").

Susan B. makes one other argument regarding her symptoms and limitations. However, because the ALJ erred by relying on outdated medical assessments and by not assessing the treating source of opinion of Nathan Hyde, P.A., supervised by Dr. Conner, the court need not address the additional argument at this time. The ALJ will have the opportunity to revisit these other issues on remand.

Based on the foregoing reasons, the decision of the Commissioner is **REMANDED.**

ENTERED this 1st day of November, 2021.

/s/ Andrew P. Rodovich
United States Magistrate Judge

11